Good morning. Will the court please call the first case? Our first case this morning, William Darin v. City of East Peoria, Robert Fox v. Dunn, Judy Nash v. Applebee's. Counsel, you may proceed. Thank you, Your Honor. May it please the court, Ms. Nash, good morning. I'm Robert Fox. I represent Bill Darin, who in September of 2010 was the police, or I'm sorry, fire chief for the City of East Peoria. He was injured in the course of participating in a fitness activity that was sponsored by the City of East Peoria. Up to this point, compensation for his injuries has been denied on the basis that at the time that he was injured, he was participating in a recreational activity pursuant to Section 11 of the Act. Is it fair to say that it also could have been denied because it didn't arise out of or in the course of? Not on any basis that I'm aware of. Why not? Well, because... He certainly wasn't at work when it happened. Yes, he was at work when it happened. He wasn't. He was at a voluntary recreational activity that was not mandated by the City of Peoria. He was told that he had to stay fit. He was participating in an activity that was created, sponsored by the City of East Peoria. For all the employees of the City of Peoria who could go there voluntarily. Is that correct? All of the employees could go voluntarily. My question is whether or not each of the employees has the same work-relatedness to fitness that these... Let me ask you a question. He could pick any recreational activity he wanted to, couldn't he? This was not a recreational activity, but he could have. Just answer the question. He could pick any fitness activity he wanted to, couldn't he? Correct. So, would your argument be the same if he stumbled and fell while he was running around the block? No. Why not? Because he wouldn't have been setting an example of fitness. He's jogging. He's running around the block every day. In the context of the nature of a firefighter's job, he has to stay fit. Fitness is important. In the context of the assignment that he was given by his immediate superior, Commissioner Densberger, to set an example of fitness... Can we break those down one at a time? Is the chief subject to, as the other firefighters are, an annual physical, certain physical fitness requirements? Is he subject to any of it? He's subject to physical requirements in his job description. I'm talking about, is he required to submit to an annual physical, and does he have to maintain certain fitness requirements? Is he tested or anything like that, like the firefighters? He's given an annual physical. He's not contractually... The answer is no. He's not under the same requirements as the regular firefighter. No, because he's not a contractual employee. He's not a union employee. That's a matter of contract. Densberger exhorts him, encourages him to be fit and lead by example. Correct? Yes. Okay. So if he decided to go cliff diving, would that qualify? Would he be covered if he has an accident? I think the proper analysis is the relationship of the activity to his job. In this particular case, the relationship of the activity being on city hours at a city facility, in a program that was created and supervised by the city, where attendance was taken by a city employee, in the presence of firefighters of the city, consistent with setting an example... Well, I don't think anybody would dispute those factors. I think it takes it out of the context of a recreational activity. Well, I think you're going to find... Will you turn on whether or not he was assigned or ordered to get into the program? Well, only if you find that it's a recreational activity. I don't believe it's a recreational activity. The first analysis and the mistake the arbitrator made was starting out with the idea that it was a recreational activity. I don't think it's a recreational activity when you are participating in a city program to stay fit, when part of your assignment as the fire chief is to be able to go in and do all of the activities of a firefighter. That's unrefuted evidence of what the nature of his job is. Is that what the statute says, though? Pardon? Is that what the statute says? What? Section 11? Yeah. Well, no, it doesn't say that. I don't know what you mean by it doesn't say that. Why wasn't this particular program voluntary? It was voluntary for all employees. For instance, you talk about this is voluntary. It was voluntary for secretaries. Does it relate to the secretary's job? Not very much. It was voluntary for firefighters. Does it relate to the firefighter's job? Sure. Why? Because safety and fitness go hand in hand in their job. Well, in this particular case... Was his purpose... Excuse me. When I talk, you stop. Excuse me. The same is true if he was just jogging around the block. If safety and fitness go with his job, jogging is good for you, I guess. I mean, some people think so. I don't. I think... At any rate, it would still be exercise. I believe that it makes a difference as to what his purpose in doing so was. So it's subjective. Pardon? It's subjective, not objective. If he thought he was doing something that they required him to do, it's covered. Well, I think the analysis in all the recreational activity cases is... Let's get off recreational. What's voluntary here? Did he have a... Was it voluntary that he had to be fit? Let's forget about the programs. That's the first part. No, I don't believe it was. Just saying the record will show that it was not voluntary. He had his supervisor, Denzberger, say, lead by example, get fit, because contractual employees have an annual physical fitness requirement. They are allowed to go at no charge to this center for stretching exercises, et cetera, but you don't have that in your contract as a supervisor. Is that correct? That's correct. Okay. So the question really is, is this a voluntary activity of fitness? And you're saying the record suggests that it is not. I'm suggesting that fitness is part of his job, which is what he... Then it is not voluntary. What is voluntary under this record, you would argue, I think, is what program does he partake in? Justice Hoffman's question was, well, what if he says, I think I'm going to start jogging? So be it. He's doing it not because he wants to, arguably, but because he's been suggested, or at least testimony and evidence suggests that his supervisor says, set an example and get fit. There's a disconnect... So why would you even go down that road of distinguishing them? There's a disconnect between the use of the word voluntary in this case as regards to the activity. On one hand, you have the portion of the statute that talks about assigned or ordered, voluntary in that context, and then voluntary in the context of choosing the type of exercise that would lead to fitness. I'm suggesting, and in answer to Judge Hoffman's question I was trying to say, that I think that he voluntarily decided to use this method to stay fit, but it was not voluntary for him to exercise or not. So we're back to my question. Is jogging around the block sufficient? Would he have been covered? It would be covered if his purpose was to remain fit for his job. So it's totally subjective. Whatever he thinks he's doing it for governs whether it's compensable or not. Well, I don't know that you can say it's completely subjective. The circumstances, again, make a difference. What about the standard of review when we're looking at whether or not it's a recreational program? Isn't that reviewed under a de novo standard? Yes. Then how do we get to looking at it from a subjective point of view if it's de novo? Well, the question is whether it's recreational in the context of this particular person, his job, and what he was doing at the time. And I'm suggesting that it is not recreational under these circumstances for this person with his job. I don't believe that that makes it entirely subjective. I think there are objective factors such as the fact that he was doing it on city time at a city facility, supervised by city employees who took attendance under the suggestion assignment of Commissioner Dinsburger who told him that he needed to lead by example. And I specifically asked Commissioner Dinsburger, was this activity consistent with what you had in mind when you told him to lead by example? And he said yes. Well, here's one of the things I wanted to ask you because this case also turns on the facts, as most cases do. You've alluded to the argument that the chief felt that this was sort of part and parcel of his job. He needed to be fit in the performance of his job. And yet when he signs the registration form, he reviewed it, it says the claimant indicated his participation in the fitness program was voluntary. He indicated his gains were to, quote, unquote, lose weight, get in better shape, and lose inches from his waist. Did he say anything about this? He felt this was a requirement of his job? It has nothing to do with his job. Well, I mean, sure, you can read it that way. It's like when it says in the statute that you're ordered to do something. In real life, do you think that anybody sends an order to the police chief or the fire chief, signed ordering him to do something or an assignment? I mean, when he went there, they said, what are your goals for fitness? So he told them what his goals for fitness were. He didn't say, and I don't have any other purpose in being here. And if he got a personal benefit as well as fulfilling a job requirement by being fit, how does that eliminate the other possibility? Well, you said this is not a recreational. You can't have a both ways activity because Durnsberger basically signed him or somehow ordered him into a fitness program. Did Durnsberger deny doing it? Did Durnsberger say, yes, I ordered him into a program? Yes. He did? Yeah. He said, I told him that I expected him to lead by example and set an example of fitness. And then I, with this program that he was participating in when he was injured, was consistent with what I had in mind when I told him that. And it would have negatively impacted my evaluation of his job performance if he hadn't done that. So I don't see how I can understand how you can take pieces of the circumstances like losing weight and taking inches off of my waist and exercising and put that together as a recreational activity. I agree. Under certain circumstances with certain employees, it would be a recreational activity. But when you have unrefuted evidence from a firefighter that says, and examples I might add of when he was at fires and had to do physical labor as part of firefighting, not just standing back and supervising, calling hoes and stuff. But when he says, part of my job is to be physically capable of being a firefighter, I think it puts him in the same category as the firefighters themselves that do work out on city time, whether they are contractually required to do so, but even if they weren't. The city wants them to be physically fit and expects them to be physically fit so they can do their job. Removing from firefighters, policemen, what if any company, the chairman of the board says, I want our employees to be physically fit because it helps, you know, there's less time off work, there's less time of illness. I want my employees to be physically fit. Lead by example and you must be physically fit. So what is the rule we're supposed to announce? Anytime somebody says that, the boss says that, and somebody gets injured working out, it's compensable? What's the rule you're expecting us to announce? A balancing act between the connection between the job and the activity. You should look at the circumstances, how related is the activity or the need for fitness to the particular individual's job, and what are the circumstances under which he or she was participating. Should an iron worker recover if he hurts his back lifting weights? He's required to be strong by his job. He's not required to be strong by his job. An iron worker isn't required to be strong. No, if he can't do his job, then he doesn't have the job. If the chief of police couldn't do his job, he wouldn't have it either. Well, this is a situation where this individual has to be able to go in and do the same work as a firefighter, and under those circumstances is expected to be physically fit enough to do it. He can't not participate in fitness and still do his job. Dennis Berger testified that there were absolutely no physical fitness requirements in the claimant's employment agreement. Well, that's not true, and it's a matter of record. He didn't say that? Pardon? He didn't say that? I don't know whether he said that or not, but in his job description, he's required to exert 100 pounds of force occasionally, 50 pounds frequently, and 20 pounds consistently or something like that. I mean, there are physical requirements in his job description. Now, the job description and the job contract are different things, but he has a written job description that has those in there. But his employment agreement, Dennis Berger, said he had absolutely no physical fitness requirements. That's his contract. What I'd submit is the contract would include the job description in terms of its implied terms. Your time is up. You'll have time, five minutes. Okay, thank you. You may respond. May I please have the floor back? My name is Judy Nash on behalf of the respondent, City of East Peoria. Council is arguing two points. First, that this is not a recreational program, and the evidence establishes that it is a recreational program for various obvious reasons. What are those obvious various reasons? Well, it's a program that was advertised to all the city employees and spouses of city employees, or anyone 16 or over, to promote actually a competition and to promote physical fitness. The program provided for the employees of the entire city to have access to a personal fitness trainer. So, therefore, they had a personal fitness trainer, and the advertisements indicated there was some sort of a diet. Do you call that recreational fitness? Yes. Is physical therapy recreational? Just as a hypothetical? Yeah, no, I would say. Why? What's the difference? The program here is a challenge between employees, and it provided for benefit to the employees, and it was actually a concept. So is physical therapy. That's a good point, Your Honor. I'm just asking. We use this recreational, but we have cases replete with games, play. Just as a generic question, is fitness box jumping recreation? Well, within this program, I believe it is recreational because the program is advertised as an opportunity for the employees and a competition. So you're hanging your hat on the fall fitness program that it's a competitive team thing, where instead of shooting at a hoop, you're attempting to reduce body mass and all of this other stuff and win a prize. Well, not so much that it's a team competition, more that the success of the participants indicates some sort of a point. They get certain points. They work towards an extra day off work. Okay. I can't speak specifically to that, but I know that that's in the exhibits. Okay. And Ms. Krupke alluded to that. Can I ask you a question? Is this statement by the arbitrator correct? The arbitrator finds it unrebutted that the petitioner was not ordered or assigned by his employer to participate in the program. Is that a correct statement? I believe it is, yes, sir. And then he says, even Densberger testified that although he recommended this program to the petitioner as well as to all employees, he did not order the petitioner to participate in the program and specifically stated that should the petitioner choose not to participate, it would not negatively impact his performance evaluation. Is that a correct statement of fact? No, it is not. The last portion of that sentence is incorrect because the actual testimony wasn't stated in Clayman's brief. Question. Was the fall fitness challenge consistent with what you had in mind when you encouraged Chief Darin to participate in physical fitness? It was an encouragement, not an order assignment. What about the negative impact on his performance evaluation? What did you say about that? Well, the question is specifically, if Chief Darin had refused to participate in fitness initiatives, would that have negatively affected your view of his job performance? The answer was, I think it's important for command to lead by example. So, yes. The point I think that's important here is that Chief Darin was not leading by example. He specifically went to the East Side Club after the firefighters did their normal morning routines between 8, a group one at 8, a group one at 9. He went afterwards. He didn't participate in the morning stretching or any exercise at the fire station. It appears to me, I submit, that he did not want to exercise and lead by example. Well, he doesn't have to participate the same time the other firefighters are there to lead by example, does he? No. I mean, it would be common knowledge that he's a part of the program, right? It could be. That's sort of a slender read to hang your hat on as a distinguishing factor. But again, if we were to find this was somehow a recreational activity, I'm getting hung up on where is the evidence that supports the argument he was ordered or assigned to participate in the program? His position would have to be he was not, correct? He was not ordered, assigned. He, Commissioner Densberger, specifically said, I didn't even recommend the program. Well, in that particular case, it would occur to me that this case rises or falls on another finding of the arbitrator that was confirmed by the commission, and it's found on page 2 of the decision. On these dates, Petitioner did not sustain an accident that arose out of in the course of his employment. And you may argue that it arose in the course of it, but you've got a little difficulty here on arising out of it. Densberger said he didn't order him to do it, so he wasn't performing an act that he was instructed to do. And he certainly had no common law duty to perform it. Could he reasonably be expected to perform an incident to his assigned duties? Here's the interesting question. Was it connected with what he had to do in fulfilling his duties? I submit it was not. Every job has physical requirements. The Petitioner had a, or the claimant had an agreement, a job agreement with the City of East Peoria, and that agreement had no physical requirements. None whatsoever. I think that is the key factor, because he can argue it was a part of his job that the chief sometimes goes to the scene of a fire, and that has some intuitive appeal. And yet, unlike the other regular firefighters, his contract was totally different. He had no physical fitness requirements to meet. Now, if it was part and parcel of his job, and that was contemplated as a term of employment, there's nothing there to back it up. One would think it would have been in the contract that he did have to maintain certain physical fitness requirements, and that's not in there for him. Right. And further, Commissioner Densberger's testimony is that he just encouraged physical fitness in general for every person. So therefore, the recommendation or the evidence... Did Densberger say that there would be a negative effect at all on his evaluation? He said if... The question was if Chief... I'm quoting... If Chief Darin had refused to participate in fitness initiatives, the leading question is, would that have negatively affected your view of his job performance? His answer was, I think it's important for command to lead by example, so yes. Is that an answer to the question? Pardon me? Is that an answer to the question that was asked? If he refused... Would it negatively impact his evaluation? He said, I think command should lead by example. So yes, if he refused. I don't see that as an answer to the question. But isn't that the basis for the arbitrator's finding? I would say the arbitrator set forth many bases for her finding that were... Well, I thought there was something that I think Justice Hoffman read in the arbitrator's decision that there was no negative effect. Well, there was a comment in the order that was incorrect as far as in her arbitration order she did say. Well, what you're saying is that the record does not bear out that finding. Right. And you agree it did not. I agree that the quote, question, and answer was made by our arbitrator, I mean by Commissioner Dentzberger. Also, Commissioner Dentzberger said he did not recommend, assign, or order his participation in that program. He only encouraged physical fitness for everyone. Very general statement. Let's go back to what we have here. It seems like the arbitrator latched onto Section 11 right at the start. Maybe because that's the way it was presented to the arbitrator. And so Section 11, from your understanding, is that this is a Section 11 activity that as an operation of law, so to speak, this cannot arise out. The condition of ill-being could not have arisen out of it in the course of the employment. Right. You have a condition of ill-being of this claimant, which is apparently two knee injuries or something like that. Correct. Okay. If it's not a Section 11 activity, what is there in the record that suggests that this arose out of it? Or is there any evidence or findings by the arbitrator about arising out of the condition of ill-being? Well, the claimant testified he can leave the fire station whenever he wants. He can leave and he actually, at the time of arbitration, would leave and work out at the Krugerplex, which is a different complex somewhere else. I'm not sure where. So he testified that he works 24 – he's on call 24-7 and he can leave at any time he wants and work out any time. Right there, I think that that indicates that just the fact of walking over to a different complex or to the east side does not in and of itself establish that it arose out of it or during the course of it, let's say during the course of it. Let me ask a question about that. I may have the facts of this case confused with another, but was there a workout room at the fire station? Yes. Every fire station has a workout room and actually they do stretch exercises that are mandatory in the morning at the individual fire station. But you would argue they're not mandatory for him? Not mandatory for him. But if, let's say, leading by example at the suggestion of his supervisor, he had gone and participated in those stretch exercises at the fire station and was injured, would you still argue that that was a voluntary recreational program for him? I think that would be a different set of circumstances than not before. So really then it just boils down to whether he's at the fire station or at this other location? Or whether he's leading by example and whether he was assigned… Well, his supervisor testified, didn't he, that this program he was involved in would fit the bill for what he had suggested to be leading by example, right? He stated it would fit the bill, but it's similar to someone saying drive carefully and then after the fact a leading question, well, would using a seat belt be something you considered careful driving? Yes. It's any sort of physical activity. Suppose the supervisor would have said, you know, I want you to lead by example and you pick the program and here's five you can choose from. You can work out at the station, you can go to Eastside, etc., etc., etc. Then what? Well, in that case… Did he have to give him a specific list or could he just say lead by example, you choose from whatever's available? Then he chose a city-sponsored program. He chose a program that was convenient to him, that was paid for and… But if the supervisor would have given him that list, would you say that's a different circumstance? Well, I think if he had refused to participate in any of the items on the list, that would be consistent with the testimony of Commissioner Dentzberger. However, I feel very clear that the commissioner did not order, assign, or even recommend the program. And that if the claimant wanted to set a good example, that he would have participated in morning stretch exercises and exercise with the… But then we're getting into really a wholly subjective opinion about what is leading by example, right? Yes. It's leading by example enough if there's only three firefighters there. Right. Well, to go back to my basic question, because this is still a basic topic, where are these injuries related? We have some conflicting evidence, a report by someone that I worked hard over the weekend, I was working meetings. And then we have the city employee physical fitness trainer saying, well, it never told me that, or whatever. I mean, was there anything in this record by the arbitrator that finds that this condition of ill-being is related to the activities of fitness? Or is it blank? I can't find it, I'll be frank. Maybe I'm not looking carefully enough. Where is it? No, I mean, I read through that. Okay. Okay, so I'm not missing something. Not that I… Because we're all into Section 11 in this case with the arbitrator, right? Right. And in fact, we do have the statement by Ms. Krupke. We also have a statement by the petitioner that he injured his knee, his right knee. Well, we have conflict that's not resolved by the arbitrator. Right. No finding that. Is that correct? I didn't… Because if it's Section 11, it's… Right. It's bingo, right? It's not confessible. Okay, thank you. Thank you, Your Honor. Request the position to be referred. I would like to suggest that part of the analysis here should take into consideration the focus on fitness that the city, through Commissioner Dinsburger, made clear to not just the union by putting physical fitness in their contract, but to my client by suggesting that he lead by example, which is another part of his job description. And suggest that if you analyze that focus on fitness in the context of how he was injured, there is a substantial connection between what he was doing and his job, such that this is not a recreational activity for him. I appreciate that there's an argument that he could have led by example in other ways, or that he could have led by example by exercising just generally. But I think that the employer has to take responsibility for the risk that its employees undertake when they emphasize fitness and suggest to them that they need to lead by example in participating in that fitness. And then the employee, in what is unrefuted evidence and testimony in this case, undertakes to fulfill that assignment by participating in a city-sponsored program. The important thing you would say is it's not a prohibited activity. He didn't take himself out by doing a prohibited. Right. Right. And I think he was, in his own mind, his purpose was to fulfill Commissioner Dinsburger's assignment to lead by example and set an example of fitness. And if he had been at a completely unrelated facility where there was no reason to believe firefighters would be there, if he was doing something, cliff diving, that wasn't necessarily related to fitness, then there are arguments, and you could find that his activity was recreational. Well, can I ask you a question? The arbitrator made another finding. Petitioner testified that although there is no requirement for him to work out or maintain a specific physical fitness level, he does work out a few times a week. He can work out whenever and wherever he wants. Yes. Well, in that particular case, why not cliff diving? Why not walk around the block? If he was working out on his own, then it would be a recreational activity. He wasn't working out on his own. He was participating in a city-sponsored program. He was very recommended. Pardon? Not ordered to do. He didn't have to do it. We get back to the idea that if you are told by your immediate superior that you're supposed to display leadership in this area and do so, and you know because he testified, yes, it would negatively affect my evaluation. He did not testify to that. That's what he testified to. I kept drawing that out of your opponent. Have you got a different answer to the question that she gave? The last word, yes. Read it to me. Well? Read it to me. She read it to me. Read it to me. I will have to find it. Never mind. I think I quoted it in my brief. The last word in that exchange is, he says, I think it's important for, and I'm paraphrasing here, all employees to be fit or to lead by example or something like that, so yes. So instead of saying to my question, would it have negatively impacted his job performance, instead of saying yes, he says, I think it's important to lead by example. So your opponent did not read the entire answer? If she didn't include the word yes at the end of the sentence, that's correct. Okay. I'll look for it. Okay. Page 10 of your brief. Thank you. I think it is quoted. And the quote is as you said it is. Thank you. Which leads to it would have negatively impacted his performance. That's what the commission said. It's the opposite to what the arbitrator said. Yes. The arbitrator was mistaken in that respect. All I'm suggesting to you is that in judging whether an activity is a recreational activity, as Judge Harris suggested, it is to some extent subjective in terms of what the employee is doing and why they're doing it. And again, I think as a policy matter and as a precedent, if the employer takes responsibility for having their employees physically fit and exposes them to the risk, which to some extent is what happened here, then they should take responsibility for the injuries that are undoubtedly going to occur. Your time is up. Thank you. Thank you, counsel, both, for your arguments in this matter this morning. It will be taken under advisement and written disposition. That'll issue.